In Re the MARRIAGE OF Lila Dian
STAMATIOU, Respondent,

and

Dimitri Stamati Stamatiou, Appellant.

No. WD 42429.

Missouri Court of Appeals,
Western District.

Nov. 20, 1990.

Allen S. Russell, Rea & Russell, Kansas City, for appellant.

James D. Boggs, Zel M. Fischer, Kansas City, for respondent.

Before NUGENT, C.J., ULRICH, J., and WASSERSTROM, Senior Judge.

ULRICH, Judge.

Dimitri Stamatiou appeals from the trial court's decree of dissolution, contesting those provisions of the decree distributing the parties' marital property. Mr. Stamatiou claims that the trial court's distribution of marital property is against the weight of the evidence and not supported by substantial evidence. He further contends that certain allocations contravene the policy of assuring that parties to a divorce become independent from each other and self-sufficient. The judgment is affirmed in part and reversed in part and remanded.

During nearly twenty-two years of marriage between Lila and Dimitri Stamatiou, the parties accumulated considerable real and personal property. In particular, the parties acquired an ownership interest in El Greco Studios, Inc., a corporation formed to own and operate the Greek Island Restaurant located in Kansas City, Missouri. Mr. Stamatiou alleged at trial and contends on appeal that his sister, Eleni Stamatiou, possesses a forty percent ownership interest in the corporation. The trial court found that the parties were the sole owners of the corporation and awarded the entire marital interest in El Greco Studios, Inc., to Mr. Stamatiou. The parties also own the commercial real estate upon which the Greek Island Restaurant is located. The trial court awarded the entire marital interest in the real estate to Mrs. Stamatiou.

The parties also possess an ownership interest in various bank accounts including a Vanguard bank account reflecting over $88,000 in deposits. The total value of these bank accounts exceeds $100,000. At trial, Mr. Stamatiou alleged that his sister, Eleni Stamatiou, also held an ownership interest in these bank accounts. The trial court concluded that the parties were the sole owners of these accounts and distributed the funds between the parties as marital property.

At one time during the marriage, the parties possessed a collection of precious coins valued in excess of $54,000. At the time of trial, the coin collection was missing from the parties' marital home, and neither party was able to account for its whereabouts. Mrs. Stamatiou testified that she believed her husband had removed the coin collection from the marital home and possessed the collection. The trial court found that Mr. Stamatiou possessed the coin collection and awarded him all marital property interest in the coin collection.

During the course of their marriage, the parties also acquired an ownership interest in Testra Corporation. According to Mr. Stamatiou's testimony, Testra Corporation was formed by members of his family for the purpose of converting a mill and adjacent property located in Greece into a hotel and resort. At trial, Mr. Stamatiou presented evidence that the parties were indebted to John Patroni in the amount of $362,150 for architectural services performed in furtherance of converting the mill into a modern hotel and resort. The trial court found that no marital debt existed with respect to John Patroni and awarded to Mr. Stamatiou all marital property interest in Testra Corporation.

On appeal, Mr. Stamatiou contends that the trial court erred in dividing the marital

and nonmarital property of the parties (I) by finding that the parties are the sole owners of El Greco Studios, Inc., and the funds deposited in various bank accounts because such findings are against the weight of the evidence and not supported by substantial evidence; (II) by finding that the parties are not indebted to John Patroni for architectural services because such a finding is against the weight of the evidence and not supported by substantial evidence; (III) by finding that appellant has in his possession a collection of precious coins because such a finding is against the weight of the evidence and not supported by substantial evidence; and (IV) by allocating the marital property interest in El Greco Studios, Inc., to appellant while awarding Mrs. Stamatiou the commercial real estate upon which that corporation's business, the Greek Island Restaurant, is located because such an allocation contravenes the purpose of § 452.330, RSMo 1986, that the parties become independent from each other and self-sufficient.

I

Mr. Stamatiou alleged at trial and contends on appeal that his sister, Eleni Stamatiou, possesses a forty percent ownership interest in El Greco Studios, Inc., and also possesses an ownership interest in the various bank accounts. Appellant presented evidence to the trial court supporting these contentions. Appellant introduced evidence that his sister's name was listed on the various bank accounts distributed by the trial court as marital property. Appellant also introduced evidence that he transferred a forty percent ownership interest in El Greco Studios, Inc., to his sister in 1985 in exchange for her financial contribution to Testra Corporation on his behalf.

At trial Mrs. Stamatiou contested her husband's claim that his sister possessed an ownership interest in El Greco Studios, Inc., and the funds deposited in various bank accounts. Mrs. Stamatiou testified that in 1986 when Mr. Stamatiou's sister visited this country from Greece Mrs. Stamatiou acquired a nonresident alien social security number for Mr. Stamatiou's sister and proceeded to open various resident alien accounts in his sister's name. Mrs. Stamatiou further testified that only marital funds were deposited into these accounts and that the purpose of placing his sister's name on the accounts was to avoid income tax liability for the interest accumulating on the accounts. Additionally, Mrs. Stamatiou testified that the 1985 transfer of stock to Mr. Stamatiou's sister never occurred.

This court is obliged to sustain a decree of dissolution unless there is no substantial evidence to support the decree, unless the decree is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Jones v. Jones,* 658 S.W.2d 483, 485 (Mo.App.1983); *Rasmussen v. Rasmussen,* 627 S.W.2d 117, 119 (Mo.App.1982); and Rule 73.01. Appellate courts exercise caution when urged to reverse a judgment as against the weight of the evidence and only so act when premised upon a firm belief that the judgment is wrong. *Gaston v. Gaston,* 776 S.W.2d 465, 466 (Mo.App.1989). This court also gives due regard to the trial court's ability to judge the credibility of witnesses. *Id.* In certain circumstances, the deference given to the trial court's assessment of the credibility of witnesses takes on "an aura of controlling significance." *Fausett v. Fausett,* 661 S.W.2d 614, 616 (Mo.App.1983).

■ With regard to the evidence supporting Mr. Stamatiou's contention that his sister possesses an ownership interest in El Greco Studios, Inc., and the funds deposited in various bank accounts, the trial court found "that the evidence of the [appellant] in this regard lacks credibility and is totally unworthy of belief." In weighing the evidence adduced at trial, the record reflects that appellant did present evidence supporting his contentions. However, the trial court, sitting in a position to judge the credibility of witnesses, specifically found this evidence to be entirely lacking in credibility. Additionally, Mrs. Stamatiou presented substantial evidence to the trial court contesting Mr. Stamatiou's claims.

Given the substantial evidence introduced by Mrs. Stamatiou and the finding of the trial court that Mr. Stamatiou's evidence lacked credibility, the findings of the trial court must be sustained.

■ Appellant further alleges that the trial court was without jurisdiction to distribute the interests in El Greco Studios, Inc., and the bank accounts because his sister was not a party to this cause of action. In order to join a party in a cause of action, the trial court must first determine the person claims an interest which rises above a mere consequential, remote, or conjectural possibility. *Vanderson v. Vanderson*, 668 S.W.2d 167, 170 (Mo.App. 1984). A similar situation was before the court in *Cochran v. Cochran*, 716 S.W.2d 275 (Mo.App.1986). In *Cochran*, the husband contested the trial court's designation of an auto body shop and business accounts as marital property. *Id.* at 277. The husband in *Cochran* claimed that the auto shop and bank accounts were the sole property of the couple's son. *Id.* The trial court in *Cochran* concluded that the auto shop was owned and controlled by the husband and that the son's name appeared on the bank accounts merely for estate planning purposes. *Id.* The court in *Cochran* concluded that if the son believed that "his legal interests were involved in the dissolution proceeding, he could have moved to join the action by intervention as of right. [The son's] interest in the business, as well as the business arrangements between his father and himself, were undisturbed by the trial court order." *Id.* at 278.

A similar issue was also addressed by the court in *Whitenton v. Whitenton*, 659 S.W.2d 542 (Mo.App.1983). In *Whitenton*, the wife contested the trial court's determination that a certificate of deposit in the husband and wife's names as trustees for their daughter was marital property without adjudicating their daughter's claim to the C.D. *Id.* at 548. The court in *Whitenton* noted that the evidence adduced at trial supported the conclusion that the daughter held no vested interest in the C.D. during her parents' lifetime and any interest she possessed was tentative. *Id.* Further-

more, the court concluded that should the daughter claim any interest in the certificate of deposit she could assert such an interest in a separate action. *Id.*

The evidence adduced at trial in the present case supports the trial court's finding that the parties are the sole owners of El Greco Studios, Inc., and the various bank accounts. Appellant's sister could have joined the action but chose not to, and any claimed interest she desires to assert in the future can be adjudicated in a separate cause of action without prejudice to her interest. Appellant's first point is denied.

## II

■ For his second contention on appeal, Mr. Stamatiou claims that the trial court erred in finding that the parties were not indebted to John Patroni for architectural services because this finding was against the weight of the evidence and not supported by substantial evidence. Mr. Stamatiou presented evidence at trial that in early 1977 John Patroni was employed as an architect to devise, draft, and implement a plan that would economically allow the mill and adjacent property in Greece to be converted into a modern hotel and resort. The parties separated on October 23, 1988. In May of 1989 Mr. Patroni presented a bill to appellant for his architectural services dating back to 1977 in the amount of $362,-150. The trial court determined that:

> [T]he claimed indebtedness in [Mr. Patroni's] favor for architectural services is not a debt of the marriage and, in the alternative, that if the same is an indebtedness of the marriage that the responsibility to pay said indebtedness should be the responsibility of Dimitri Stamatiou. The evidence of [Mr. Stamatiou] that said bill for architectural services represents a marital debt lacks credibility and is not worthy of belief.

Mrs. Stamatiou testified at trial that Mr. Patroni is married to another of Mr. Stamatiou's sisters, Marina Patroni, and that his architectural services were contributed in order to secure Marina Patroni an interest in Testra Corporation. Mrs. Stamatiou testified that Mr. Patroni and his wife lacked

the financial resources to invest in the corporation, and thus his contribution of services was their only means of participating in the project. The trial court determined that Mr. Stamatiou's evidence was not credible and relied upon Mrs. Stamatiou's evidence in reaching its conclusion that the parties were not indebted to Mr. Patroni as a result of his services. The trial court's finding is not against the weight of the evidence, Mrs. Stamatiou presented substantial evidence to support her contention and the trial court's findings must be upheld.

### III

■ During their marriage the parties acquired a precious coin collection valued at over $54,000. According to Mrs. Stamatiou's testimony, at the time of trial these precious coins had disappeared. At trial Mrs. Stamatiou testified as follows:

Q. Did he also take out of the marital home cash and precious metals?

A. Yes. Yes. The first time he was in there. I'm assuming. I can't say. I know he took the cash. . . . I can only assume that he took [the coins], but I can't—because there are other things that would have been taken if a burglar had taken them. That's why I'm assuming it was him.

\* \* \* \* \* \*

A. But at any rate, they [the coins] were in my possession when we first separated, but over the time of him coming in and out, I don't know now. Like I said, I can only assume that he's got—what is left in my possession are some Liberty coins and some Kennedy half dollars worth fifty cents apiece. The rest of them have disappeared. And like I said other things—I guess if a thief came in, they'd be taking stereos and cameras and video equipment and things like that. They would not just take—

\* \* \* \* \* \*

Q. When did he steal this gold and silver?

A. I'm not sure, I hid it, and obviously I would hide it in a place that's not easily accessible. And he did mention—the first time when he broke in, he said he had seen where I had hidden it and was not interested in taking it. He had bigger things in mind. I didn't move the hiding place. It was in two separate batches, also. And then about three weeks ago—just before I went to Mexico—no, before that—I noticed—I was checking things out, and I noticed that it wasn't there.

\* \* \* \* \* \*

Q. And so he got into both batches?

A. I didn't see him do it. I don't know, but yes. I would say he must have.

Based upon this testimony the trial court found that the precious coins were in Mr. Stamatiou's possession and awarded him the parties' interest in these coins. On appeal, Mr. Stamatiou contends that this finding is against the weight of the evidence and not supported by substantial evidence.

As previously stated, Missouri law requires that every finding of the trial court be supported by substantial evidence. *Murphy v. Carron,* 536 S.W.2d at 32; *Jones v. Jones,* 658 S.W.2d at 485; and *Rasmussen v. Rasmussen,* 627 S.W.2d at 119. The appellate court exercises the power to reverse a judgment of the trial court as against the weight of the evidence or not supported by substantial evidence with great caution. *Gaston v. Gaston,* 776 S.W.2d at 466. However, situations are presented where the court must exercise this power.

Mrs. Stamatiou's assumptions and speculations that her husband entered her home and removed the precious coins fail to rise to the level of substantial evidence. While the trial court is given wide latitude in weighing the evidence, its findings may not rest solely upon speculation and conjecture. *See Majors v. Butner,* 702 S.W.2d 539, 544 (Mo.App.1985); and *W & S Investment Co. v. Mushrush,* 669 S.W.2d 601, 604 (Mo.App. 1984). Mrs. Stamatiou's testimony is so speculative that it fails to provide even a reasonable inference that Mr. Stamatiou is

in possession of the precious coins. The trial court's determination that Mr. Stamatiou possesses the coin collection is not supported by substantial evidence and is against the weight of the evidence. The portion of the trial court's decree distributing the coins to Mr. Stamatiou is reversed.

## IV

■ As previously stated, the parties possess an interest in El Greco Studios, Inc., which owns and operates the Greek Island Restaurant. Additionally, the parties own the commercial real estate upon which the Greek Island Restaurant is located. The trial court allocated the entire marital property interest in El Greco Studios, Inc., to Mr. Stamatiou while awarding the commercial real estate upon which the Greek Island Restaurant is located to Mrs. Stamatiou. Mr. Stamatiou contends the trial court erred in that such an allocation contravenes the purposes of § 452.230, RSMo 1986, that the parties become independent from each other and self-sufficient.

Appellant relies upon *Fields v. Fields*, 584 S.W.2d 163, 166 (Mo.App.1979), and *Fausett v. Fausett*, 661 S.W.2d 614, 618 (Mo.App.1983), as authority to support his contention that the purpose of § 452.330 is to accomplish a total severance of possession and title between spouses and to place each former spouse in an independent and self-sufficient status. This court certainly recognizes that such a policy exists. However, that policy is not violated by the trial court's allocation of property in this case.

In *Dixon v. Dixon*, 605 S.W.2d 508 (Mo. App.1980), the trial court allocated the parties' interest in a lumber company to the husband while awarding the real estate upon which the lumber company was situated to the wife. *Id.* at 509. In *Dixon*, the court stated that the trial court's allocation should be upheld if reasonable men would differ as to the propriety of the trial court's action. *Id.* at 510. The court noted that there was "nothing in the record that would indicate that the husband's company will no longer enjoy the use of the land where it has operated in the past, nor that it would be unprofitable to operate elsewhere." *Id.;* see also *Cochran*, 716

S.W.2d at 278. The court in *Dixon* reached the conclusion that reasonable men could differ as to the effect of splitting control of the land and business and thus upheld the trial court's allocation. 605 S.W.2d at 510.

Similarly, Mr. Stamatiou has not presented convincing evidence that the trial court's allocation of the corporation to him and the real estate to his wife will jeopardize his operation of the corporation. Mr. Stamatiou complains that the trial court's allocation contravenes the policy of assuring that each spouse will become independent and self-sufficient. However, reasonable people could disagree as to whether the trial court's allocation will result in either party remaining dependent upon the other. The trial court's allocation is affirmed.

In his brief, Mr. Stamatiou also complains that the trial court's allocation of marital property is heavily weighted in favor of Mrs. Stamatiou. This court finds that the trial court's allocation was fair and equitable, except for the allocation of precious coins to Mr. Stamatiou. The trial court's error regarding the precious coins necessitates remanding this cause for the purpose of reallocating marital property. To provide the trial court latitude in determining a fair and equitable result, the portion of the court's judgment distributing the marital property is reversed and remanded so that the trial court will be able to reallocate property in lieu of the precious coins in a fair and equitable manner. *See Riley v. Riley*, 778 S.W.2d 666, 670 (Mo.App.1989). Therefore, this cause is remanded to the trial court to reallocate the marital property.

Finally, Mrs. Stamatiou complains that her husband's appeal to this court is frivolous. Given this court's disposition of the cause, the complaint is without merit. The judgment is affirmed in part and reversed in part and remanded to the trial court to amend its decree consistent with this opinion.

All concur.